FILED

2025 Mar-27  PM 04:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **SANDRA J. STATEN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:24-cv-01810-RDP** |
| | } | |
| **NORTH HILL NURSING AND** | } | |
| **REHABILITATION CENTER, LLC,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Defendant North Hill Nursing and Rehabilitation Center, LLC's ("North Hill") Partial Motion to Dismiss. (Doc. # 3). The Motion has been fully briefed (Docs. # 3, 10, 11) and is ripe for decision. After careful review, and for the reasons discussed below, North Hill's Partial Motion to Dismiss (Doc. # 3) is due to be granted.

## I.      Background

Plaintiff Sandra J. Staten ("Plaintiff") has filed suit against North Hill asserting claims of age discrimination, disability discrimination, and retaliation arising out of her employment with North Hill.

Plaintiff is a 73-year-old female with chronic migraines, diabetes, and mobility issues. (Doc. # 1 ¶ 12). She worked as a PRN (*i.e.*, "as needed") nurse for North Hill "for approximately two years around 2019 and 2020." (*Id.* ¶ 13). Sometime in or around 2022, Plaintiff enrolled in a Master's Degree program for Health Administration. (*Id.* ¶ 14). In or around September 2022, Plaintiff contacted Rodney Perry, who was the Executive Director of North Hill at the time, and inquired about returning to North Hill as an Assistant Executive Director. (*Id.* ¶ 15). In her Complaint, Plaintiff alleges that "Perry informed her that he would need to get approval for the

position, but [she] could work as a full-time wound care nurse in the meantime and would be elevated when the position was approved." (*Id.* ¶ 16). On October 22, 2022, Plaintiff started the full-time wound care nurse position. (*Id.* ¶ 17). According to Plaintiff, she performed the essential functions of her job, such as changing dressings and keeping records. (*Id.* ¶ 31).

On or around November 6, 2022, Plaintiff "suffered a fall resulting in an on-the-job injury and was temporarily placed off work." (*Id.* ¶ 18). Plaintiff alleges that her fall caused "ongoing mobility issues." (*Id.* ¶ 34). A month or so after Plaintiff's fall, in or around December 2022, Plaintiff's medical provider placed her on "light duty, sitting only." (*Id.* ¶ 19). To accommodate her light duty restriction, North Hill temporarily assigned Plaintiff to a "records" position.[1] (*Id.* ¶ 20).

On or around January 4, 2023, Plaintiff learned from another employee that North Hill had hired Autum Wise ("Wise") as an Assistant Executive Director. (*Id.* ¶ 21). At the time North Hill hired her, Wise was thirty-two years old. (*Id.* ¶ 22). According to Plaintiff, North Hill hired Wise as a "new hire" directly into the Assistant Executive Director position. (*Id.* ¶ 23). Plaintiff alleges that she has a more extensive educational background and more work experience than Wise. (*Id.* ¶¶ 24-25).

The same day that she learned Wise had been hired, Plaintiff sent Perry a letter complaining that "hiring Wise over her was 'ageism' and she expected North Hill to 'rectify' the 'discriminatory action[.]'" (*Id.* ¶ 26). In her Complaint, Plaintiff alleges that "North Hill reduced [her] schedule within 15 days of her complaint of age discrimination." (*Id.* ¶ 40).

---

[1] Plaintiff alleges that "[a]fter her injury, North Hill treated [Plaintiff] as elderly and incompetent, limiting her to part-time work" (*id.* ¶ 36), but she does not specify when North Hill started treating her in this alleged way.

On January 8, 2024, Plaintiff was "released to full duty, with assistance, 'limited standing and walking.'" (*Id.* ¶ 27). On January 13, 2024, Plaintiff was ordered to continue physical therapy for six additional visits. (*Id.* ¶ 29). Plaintiff alleges that she notified North Hill of the continued need of physical therapy and requested that her work schedule accommodate attendance at physical therapy. (*Id.* ¶ 30). Plaintiff further alleges that "North Hill reduced [her] schedule within 10 days of her request for disability accommodations." (*Id.* ¶ 41).

According to her Complaint, on January 18, 2024, Plaintiff reported to work "to find North Hill had locked her out of the wound care cart, preventing her from performing her duties." (*Id.* ¶ 32). Plaintiff also alleges that around this time she learned that "North Hill had been surveilling her hours and charts related to the patient care she was providing." (*Id.* ¶ 33).

On that same day, January 18, 2024, North Hill sent her home and informed her that she was only to work weekends as a wound care nurse, and that they would call her when needed. (*Id.* ¶ 37). Plaintiff alleges that "North Hill hired a younger employee, without a known disability, to operate as the wound care nurse during the weekday shifts." (*Id.* ¶ 38). Plaintiff further alleges that on that same day, January 18, 2024, she "submitted a note to her file related to the surveillance and general hostility and/or intimidation from supervisors." (*Id.* ¶ 38).

In her Complaint, Plaintiff alleges that from January 18, 2024 through approximately July 2024, North Hill only scheduled her to work part-time or on weekends. (*Id.* ¶ 48). Plaintiff further alleges that after she complained to Perry that her shift had been reduced to part-time, Perry did not take any corrective action. (*Id.* ¶¶ 42-43). According to Plaintiff, around this time, "North Hill stopped pay[ing] Plaintiff any sign-on bonus." (*Id.* ¶ 49).

On January 31, 2024, Plaintiff requested intermittent leave related to chronic migraines. (*Id.* ¶ 44).

In March 2024, Plaintiff filed an inquiry with the EEOC. (*Id.* ¶ 45).

In or around May or June 2024, Plaintiff took a short leave of absence to handle a family matter related to the death of her daughter-in-law. (*Id.* ¶ 46). Approximately one week after returning to work following her short leave of absence, Plaintiff alleges that "North Hill constructively discharged [her], requiring she 're-apply' before being returned to the schedule." (*Id.* ¶ 51). Plaintiff did not reapply and instead obtained a new position at a different nursing facility. (*Id.* ¶ 52).

On June 15, 2024, Plaintiff filed an EEOC charge against North Hill alleging age discrimination and retaliation. (*Id.* ¶ 47; Doc. # 1-1). According to Plaintiff, she also "provided information related to her disability and request for accommodations to the EEOC" during its investigation. (Doc. # 1 ¶ 50). Plaintiff received the notice of her right to sue from the EEOC on September 24, 2024. (Doc. # 1-2). Plaintiff initiated this action on December 27, 2024. (Doc. # 1).

## II.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

When considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC,* 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

Complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

5

### III.    Discussion

Plaintiff's Complaint asserts five causes of action: (Count One) Age Discrimination – ADEA; (Count Two) Retaliation under the ADEA; (Count Three) Disability Discrimination – ADA; (Count Four) Retaliation under the ADA; and (Count Five) Retaliatory Hostile Work Environment – Age. (Doc. # 1).

North Hill has moved to dismiss Plaintiff's Americans with Disabilities Act ("ADA") claims asserted in Counts Three and Four for failure to exhaust administrative remedies. (Doc. # 3). North Hill argues that in her EEOC charge Plaintiff did not indicate that she suffered disability discrimination or disability retaliation; therefore, it contends Plaintiff cannot pursue those claims now. (*Id.*). The court agrees.

Before bringing an ADA claim, "[a]n employee . . . must first exhaust her administrative remedies by filing a Charge of Discrimination with the EEOC." *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018) (citing *Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001)); *see also Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1339-40 (11th Cir. 2017). A "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (quoting *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1332 (11th Cir. 2000)). "[J]udicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate." *Batson*, 897 F.3d at 1327 (quoting *Gregory*, 355 F.3d at 1279-80). However, the scope of a charge of discrimination should not be interpreted in too strict a manner and procedural technicalities should not be seized upon to bar claims. *Gregory*, 355 F.3d at 1280.

In Counts Three and Four of the Complaint, Plaintiff alleges disability discrimination and retaliation under the ADA. (Doc. # 1 ¶¶ 69-88). Specifically, Plaintiff alleges that she "suffers from mobility issues requiring limited standing and walking, and chronic migraines." (*Id.* ¶ 70). She alleges that, after she requested an accommodation for mobility, North Hill reduced her to part-time hours and replaced her with a non-disabled, full-time employee, and that after she requested an accommodation for migraines, North Hill discharged her. (*Id.* ¶¶ 85-87). North Hill contends that these claims are improperly asserted because Plaintiff failed to exhaust all available administrative remedies before asserting her claims under the ADA. (Doc. # 3).

On its face, Plaintiff's EEOC charge alleges discrimination only on the basis of age as well as retaliation. (Doc. # 1-1 at 1). The factual particulars set out:

> I am 71 years old. I was hired by the above-named employer in or around October 2022 as a wound care nurse. In September 2022, I applied for the Assistant Executive Director position. During my initial interview, I was informed by the executive director, Rodney Perry, that the employer was not planning to hire an assistant executive director. During the interview, Mr. Perry offered me the wound care nurse position, which I accepted. On November 6, 2022, I fell while at work, and my injury required me to be temporarily transferred to another position. While working in the temporary position, it came to my knowledge that Autumn Wise, a younger, less qualified individual was hired as the Assistant Executive Director. I asked Mr. Perry why I was not considered for the position, and he stated that I was not considered due to it being a special program. After recovering from my injuries, I returned to the wound care nurse position, but the employer changed my position to part-time. I explained to the employer that I was hired as a full-time wound care nurse, not part-time. The employer insisted that I had been hired as a part-time employee and refused to place me back full-time. I believe if not for my age, I would have been considered for the Assistant Executive Director position. I also believe that if I had not complained about being denied consideration for the position, I would still be a full-time employee.

(*Id.*).

There is simply no claim for disability discrimination stated in the charge's narrative or otherwise indicated in the charge. Further, an investigation into the scope of the charge, and particularly Plaintiff's allegations contained in the charge, would not result in an EEOC

investigator examining whether there was disability discrimination or disability retaliation against Plaintiff. So, any reasonable investigation of the charge's actual allegations would not develop information about any alleged ADA discrimination or retaliation because those two theories are not like or related to the factual assertions made in the charge. *See Gregory*, 355 F.3d at 1280.

Here, all factual allegations contained in the EEOC charge are related to Plaintiff's age and retaliation for complaints related to age. *Sanchez v. Standards Brands*, 431 F.2d 455, 462 (5th Cir. 1970)[2] (holding that "the crucial element of a charge of discrimination is the factual statement contained therein. Everything else entered on the form is, in essence, a mere amplification of the factual allegations."). There is nothing to suggest the allegations in the EEOC charge are related to disability discrimination. This failure not only foreclosed the EEOC from investigating disability discrimination, it also deprived North Hill of notice of such an assertion. Plaintiff's arguments to the contrary are unavailing.

In her response to North Hill's Partial Motion to Dismiss, Plaintiff argues that her EEOC charge contained sufficient information to constitute a charge of disability discrimination and retaliation. (Doc. # 10 at 3). Plaintiff points to the allegations in her charge concerning her fall at work, which resulted in an injury and required her to be transferred to another position. (*Id.* at 4). Plaintiff asserts that based on a "broad reading of this allegation" her "'injury' was [a] physical impairment that substantially limited one or more of her major life activities and required an accommodation, i.e. the transfer to another position." (*Id.* at 4-5).

But, even a broad reading of Plaintiff's injury fails to put either the EEOC or North Hill on notice of a claim of disability discrimination or retaliation based on disability discrimination.

_____

[2] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981 constitute binding precedent in the Eleventh Circuit).

Although Plaintiff references an on-the-job injury, she does not suggest that injury constituted any disability. Nor does she even explain what the injury was. She also does nothing to connect her injury and any alleged discriminatory action by North Hill. Plaintiff merely states, "I fell while at work, and my injury required me to be temporarily transferred to another position" and "[a]fter recovering from my injuries, I returned to the wound care nurse position." (*Id.*). From these statements, the EEOC could not reasonably be expected to conclude that Plaintiff may have suffered a disability or investigate disability discrimination.

Moreover, in Plaintiff's EEOC charge she clearly asserts that she was discriminated based on age, not disability: "I believe if not for my *age*, I would have been considered for the Assistant Executive Director position." (*Id.*) (emphasis added). Plaintiff also states "it came to my knowledge that Autum Wise, a *younger*, less qualified individual was hired as the Assistant Executive Director" (*id.*) (emphasis added), clearly making a distinction based on age – not disability.

Because Plaintiff fails to allege a disability or any disability discrimination in her EEOC charge, it follows that she has not alleged retaliation based on disability either. The ADA prohibits retaliation against an employee who has "opposed any act or practice made unlawful by" the ADA or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the ADA. 42 U.S.C. § 12203(a). As explained, the narrative in Plaintiff's EEOC charge lacks any reference to a disability. Therefore, Plaintiff's claims of ADA discrimination and retaliation are outside the scope of the charge.

For these reasons, Plaintiff did not exhaust her administrative prerequisites as to the disability discrimination and retaliation claims contained in Counts Three and Four of the Complaint. Therefore, those claims are due to be dismissed.

**IV.    Conclusion**

For the reasons outlined above, North Hill's Partial Motion to Dismiss (Doc. # 3) is due to be granted. An order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this March 27, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE

10